IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Michel and Efford Haynes, ) | |
| ) | Civil Action No. 8:12-00470-TMC |
| Plaintiffs, ) | |
| ) | |
| v. ) | **OPINION & ORDER** |
| ) | |
| Auto-Owners Insurance Company, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendant, Auto-Owners Insurance Company's ("Auto-Owners"), motion for summary judgment (ECF No. 28). That motion was fully briefed (*see* ECF Nos. 30, 38) and the court heard oral argument from all parties on July 11, 2013.

### I.  Background

Michel Haynes and his sister jointly purchased a piece of property, referred to in this litigation as the "Harpers Building," in 1993. In 1996, Michel's sister transferred her interest in the building to Michel, leaving him with sole ownership. In 2002, Michel purchased a commercial general liability policy covering the building from Auto-Owners. Subsequently, Michel received notices in the mail regarding alleged code violations and other issues with the Harpers Building. Because of his job as a long-haul truck driver, Michel was not able to respond to these notices in a timely manner or appear for related court dates. So, to ensure that the notices came to someone who was in town and could respond properly, in December of 2009, Michel deeded the property to his father, Reverend Efford Haynes.[1] However, Michel did not transfer the insurance policy or inform Auto-Owners of the change in ownership.

---

[1] The evidence indicates that Efford held record title for reasons of convenience only – so he could manage the property, essentially as Michel's agent, when Michel was away on business.

1

On June 1, 2010, a large portion of the building's roof collapsed. Michel and Efford notified Auto-Owners. The adjuster initially assigned adjusted the claim as a covered loss under the policy and paid a third-party contractor for demolition and clean-up costs. Several months later, a different adjuster was assigned to the claim. In September 2010, this adjuster arranged for title examination of the property, which determined that Michel had transferred title to his father prior to the loss. Consequently, by a letter dated December 20, 2010, it denied coverage. Michel and Efford, then, brought this action, alleging bad faith and breach of contract. Auto-Owners has moved for summary judgment on two grounds: (1) Efford lacks privity of contract with Auto-Owners and (2) Michel lacks an insurable interest in the property. Accordingly, before the court can reach the plaintiffs' claims, it must decide whether either plaintiff has standing to bring those claims.

## II.     Legal Standard

Summary judgment is appropriate if, after reviewing the entire record, the court is satisfied that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" only if establishment of that fact might affect the outcome of the lawsuit under the governing substantive law. *Id*.

## III.     Discussion

### a. Efford's Privity of Contract

Under South Carolina contract law, "an individual who is not a party to a contract lacks privity to enforce it." *Trancik v. USAA Ins. Co.*, 581 S.E. 2d 858, 861 (S.C. 2003). Privity of contract is "the relationship between the parties of a contract, allowing them to sue each other

but preventing a third party from doing so." Black's Law Dictionary 1320 (9th ed. 2009). Insurance is a personal contract between the insurance company and the insured and the insurance company's obligations to the insured do not pass with the land they cover, "unless assigned with the consent of the insurer, or unless by extraordinary or special and express stipulation of the parties it is made to run with the subject matter." *Crook v. Hartford Fire Ins. Co.*, 178 S.E. 254, 257 (S.C. 1935).

The parties agree that Efford was not a named insured, but the plaintiffs assert that he has privity of contract with Auto-Owners because he held the property in trust for Michel. They argue that the arrangement described by both Michel and Efford in their depositions and statements to the insurer is that of a trust and that the insurance policy covers mortgage holders and includes a "trustee" as a mortgage holder. At the least, they say, this creates an ambiguity in the policy that the court must construe in favor of coverage.

However, neither type of equitable trust recognized in South Carolina, constructive or resulting, apply to this case. A constructive trust arises when a party has obtained money that does not equitably belong to him. That is clearly not the case here. A resulting trust arises when real estate is conveyed to one person and the consideration is paid by another, it is presumed that the party who pays the purchase money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. However, the trust must arise at the time the real estate is purchased and not as a result of later advances of funds or subsequent transactions. *See Green v. Green*, 237 S.C. 424, 435 (1960); *Surasky v. Weintraub*, 90 S.C. 522 (1912). When Michel conveyed the property to Efford, no money exchanged hands, so no resulting trust arose. And, Michel's previous and subsequent expenditures cannot create the trust.

Also, even if Efford was holding the property in trust for Michel, he was not a "trustee" as that term is used in the policy. The policy states:

"a. The term 'mortgage holder' includes trustee.

b. We will pay for covered loss of or damage to each mortgage holder *shown in the Declarations* in their order of precedents, as interests may appear."

(emphasis added.) Efford is not listed as a mortgage holder on the declarations page or elsewhere.

Efford does not have privity of contract with Auto-Owners, so he does not have rights under the policy and cannot bring a bad faith or breach of contract action. Accordingly, Auto-Owners's motion for summary judgment is granted as to Efford Haynes.

### b. Michel's Insurable Interest

In its motion for summary judgment, Auto-Owners asserts that a dispute about the interpretation of the terms of an insurance policy does not create a material issue of fact, but is an issue of law to be resolved by the court. *See Allstate Ins. Co. v. Best*, 728 F. Supp 1263 (D.S.C. 1990) ("Under South Carolina Law the construction and interpretation of an insurance policy should be determined as a matter of law by the court.") However, the central question here is not how to interpret the policy language, but whether Michel had an insurable interest in the building.

There is no doubt that after he transferred the deed to Efford, Michel no longer held legal title to the building. However, lack of legal ownership does not end the insurable interest inquiry. Anyone who derives a benefit from property's existence or would suffer a loss from its destruction may have an insurable interest in that property. *See Reid v. Hardware Mut. Ins. Co.*

4

*of the Carolinas, Inc.*, 252 S.C. 339, 343-44 (1969); *Crook v. Hartford Fire Ins. Co.*, 175 S.C. 42, 48 (1934).

South Carolina courts have applied this definition to find insurable interests even where the insured sold the property or otherwise transferred legal title. *See, e.g., Nelson v. United Fire Ins. Co. of NY*, 275 S.C. 02 (1980) (insurable interest where insured sold land but agreed that the house was not part of the transaction and continued to receive monthly rental payments from the tenant after the sale); *Hatcher v. Harleysville Mutual Ins. Co.*, 266 S.C. 548 (1976) (insurable interest where insured had an oral contract to purchase, possession of the property, and purchased homeowners insurance in reliance on oral contract); *Reid v. Hardware Mutual Ins. Co. of the Carolinas*, 252 S.C. 339 (1969) (insurable interest where insured conveyed the property but did not inform insurer or transfer the policy but insured still owed on the mortgage note). *But see Belton v. Cincinnati Ins. Co.*, 360 S.C. 575 (2004) (no insurable interest created by option to purchase where insured did not have any equity in the land or personal stake in the property); *Powell v. Ins. Co. of N. Am.*, 285 S.C. 588 (Ct. App. 1985) (no insurable interest where mother orally promised silver to son but left all personal property to the father in her will).

These cases show that insurable interests after conveyance require something more than just an oral agreement between parties, but, other than the general receive a benefit or suffer a loss language, they do not provide much specific guidance. As a result, the existence of an insurable interest after conveyance is necessarily a fact-specific inquiry.[2]

Here, Auto-Owners asserts that Michel did not have an insurable interest because: (1) he did not own the building; (2) he and Efford did not have a written agreement to share profits

---

[2] In addition to the common law definition of insurable interest, the Auto-Owners policy states, "We will not pay you more than your financial interest in the Covered Property." In its motion for summary judgment, Auto-Owners refers to this as "the Policy's formulation of the insurable interest requirement." While that language is clear and unambiguous, it does not resolve the issue of whether Michel had a financial interest in the building and, if so, to what extent.

5

from or to jointly own the building; (3) he never received distributions from revenue; (4) he was not under any legal obligation to maintain the building; and (5) Efford's oral promise or future intention to return the building to Michel is unenforceable because it was not reduced to writing and, therefore, does not rise to the level of a cognizable legal interest in the property.

The plaintiffs claim that Michel retained an insurable interest after he transferred ownership to Efford because: (1) Michel suffered a loss from his initial investment after the roof collapsed because the building was worth less; (2) Michel benefited from the property because, while it never made a profit, the rents generated offset the cost of insurance, taxes, and maintenance, which were paid out of a joint account held by Michel and his parents; (3) Michel performed much of the maintenance on the building himself, even after transferring the title; and (4) all parties involved in managing the building operated under the understanding that it was Michel's building, that he would receive any profit from it, and that Efford's only role was to deal with matters that arose while Michel was out of town.

Auto-Owners appears to equate insurable interest with legal interest. The court agrees that Michel does not appear to have had a legal interest in the building at the time of the roof collapse. However, the court finds that the facts presented do support the plaintiffs' assertion that Michel retained sort of equitable interest. The extent of that equitable interest is an issue of fact for a jury. Accordingly, Auto-Owners's motion for summary judgment is denied as to Michel Haynes.

## IV.     Conclusion

For the forgoing reasons, Auto-Owners's motion for summary judgment (ECF No. 28) is granted in part and denied in part.

**IT IS SO ORDERED.**

                                                    s/Timothy M. Cain  
                                                    United States District Court Judge

August 6, 2013  
Anderson, South Carolina